39 N.Y.2d 729 (1976)
The People of the State of New York, Respondent,
v.
Charles Burke, Appellant.
Court of Appeals of the State of New York.
Argued February 13, 1976.
Decided April 6, 1976.
Michael Lee Hertzberg and William E. Hellerstein for appellant.
Mario Merola, District Attorney (Billie Manning of counsel), for respondent.
Concur: Chief Judge BREITEL and Judges JASEN, GABRIELLI, JONES, WACHTLER and COOKE. Judge FUCHSBERG dissents and votes to reverse in the following opinion.
Order affirmed in the following memorandum: The order of the Appellate Division should be affirmed on the ground that at sentencing the Assistant District Attorney gave his reasons for recommending a minimum sentence, namely, the commission of the crime by knife, the stabbing of the victim because he did not pay the money over fast enough, and that the defendant had a record. Notably the court imposed the minimum *731 sentence (with a maximum less than that recommended by the Assistant District Attorney) within seconds after the statement by the Assistant District Attorney. Consequently, it is inferable from its more conclusory recital that the court was incorporating the assistant's references. There was therefore substantial compliance with the statute and its salutary purposes.
FUCHSBERG, J. (dissenting).
Today's decision, as I see it, sanctions the interpretation and application of what was intended to be a salutary sentencing statute in a manner which, for all practical purposes, renders it nugatory. An important opportunity is also passed by to take a step forward towards the development of badly needed sentencing standards. For both of these reasons, I respectfully dissent.
Defendant, whose only prior criminal record was a conviction for an attempted sale of marijuana, was found guilty, after a trial at which he took the stand, of robbing a liquor store of approximately $15. Defendant was not armed. However, in the course of the commission of the crime, an accomplice, who absconded before trial, inflicted a minor knife wound on the proprietor of the store. The sentencing Judge imposed an indeterminate sentence whose maximum term was to be 18 years in prison. He also, by mandating that the minimum period of imprisonment be six years, deprived the parole authorities of all power to release the defendant at any earlier time.
Guilt or innocence is not at issue on this appeal. Nor, in view of our court's policy not to review sentences except for illegality or unconstitutionality (People v Gittelson, 18 N.Y.2d 427, 430; People v Speiser, 277 N.Y. 342, 344), is our concern here with the maximum limits of the sentence. Rather our focus is solely on the legality of the procedure by which the irreducible six-year minimum was fixed.
In mandating the minimum sentence, the trial court purported to act under section 70.00 (subd 3, par [b]) of the Penal Law. That statute, the sole exception to the long-standing employment of the indeterminate term for prison sentences in our State, was enacted in 1967. Its language, in pertinent part, is as follows: "3. * * * (b) Where the sentence is for a *732 class B, class C or class D felony and the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that the ends of justice and best interests of the public require that the court fix a minimum period of imprisonment, the court may fix the minimum period. In such event, the minimum period shall be specified in the sentence and shall not be more than one-third of the maximum term imposed. When the minimum period of imprisonment is fixed pursuant to this paragraph, the court shall set forth in the record the reasons for its action." (Penal Law, § 70.00; emphasis supplied.)
In meting out the sentence here, the trial court did not "set forth in the record the reasons for its action". In almost haec verbae, the court merely repeated some of the language by which the statute generally indicates some of the areas of concern to which it was directed, saying only that it was "giving due consideration to the nature of the offense and the character of the defendant", a clause obviously so lacking in the basic requisites of a ratio decidendi as to have merited its characterization as but a "slogan" (Mueller, Imprisonment and Its Alternatives 33, at p 34 et seq., A Program for Prison Reform, Final Report of Annual Chief Justice Earl Warren Conference on Advocacy in United States of the Roscoe Pound-American Trial Lawyers Foundation [1972]). Not in the slightest did the court indicate just what it was about the "nature of the offense and character of the defendant" which motivated it in choosing the minimum sentence it imposed. Nor did it indicate why, to quote other general language of the statute, "the ends of justice and best interests of the public" required such a disposition.
Except for topical references to the two general categories, it did not discuss any of the many obvious considerations which one would have thought might influence the court, whether they be the defendant's role vis-à-vis his accomplice's in the planning and commission of the crime; his motivation; his premeditation; the degree of danger to which others had been exposed; his family; his and their mental, emotional and physical health; his repentence, if any; his rehabilitation potential; his educational and vocational aptitudes and attitudes; or any of a host of other such factors. There was not even a passing reference to the nonconfidential data in the presentence report (cf. People v Perry, 36 N.Y.2d 114, 120).
Such omissions were not cured by resort to the reasons *733 which the Assistant District Attorney had used to support his own presentence recommendation. The responsibility for sentencing is the court's and the court's alone, and the duty to set forth its reasons under the statute too rests with the court. So, even though a court is not thereby precluded from adopting the recorded rationale of another as its own, it would have to affirmatively indicate that it was doing so. In the present case, there was no such showing at all. To the contrary, the court in its own sentencing remarks, did not, by so much as a single word, make reference to the prosecutor or the latter's comments, much less adopt them. Certainly, no assumption that it did would follow from either the fact that a prosecutor's comments precede those of a court at the time of sentencing, which they almost invariably do, or from the fact that a court adopts a prosecutor's recommendation as to sentence, which the court here did not quite do. The whole point of this appeal, and of the statute, is that a sentence and the reasons for it are two different things and that it is quite possible, and perhaps not uncommon, for a correct sentence to be imposed for the wrong reasons and vice versa.
It should be emphasized that section 70.00 of the Penal Law is a most significant penological enactment. It is at the very least a legislative attempt to deal with rather than to ignore reality in sentencing. It reflects mounting criticism of what had for long come to be the universal and exclusive resort of American courts to the indeterminate sentence, a sentence which, in its essentials, has well and simply been described as one under which "the precise term of confinement is not known on the day of judgment but will be subject within a substantial range to the later decision of a parole board or some comparable agency" (Frankel, Criminal Sentences, p 86 [1973, Hill & Wang]). (See, generally, Struggle for Justice, A Report on Crime and Punishment in America Prepared for the American Friends Service Committee [1972, Hill & Wang].)
The attack on its indiscriminate use has been fueled, among other things, by concern over the escalating incidence of crime, criticism of disparity in sentences, shock at the rate of recidivism and recognition that rehabilitative measures by and large have been failures.
It is not for us, and certainly not here, to choose among legislated preferences for the determinate sentence, the indeterminate sentences or admixtures of the two, of the last of *734 which section 70.00 is an example. Our task here is to enforce that statute's requirement that the court separately state its reasons for each minimum sentence it dispenses.
Aside from fostering a policy of openness which I believe makes for greater public confidence in our courts generally, the setting forth of reasons for sentences, particularly ones spelling out compulsory minimum terms of imprisonment, serves many purposes. It may be useful, it seems to me, to make brief reference to several illustrative ones in order that the requirement for reasons may be seen in perspective.
Thus, a statement of reasons gives greater assurance that a sentence is the result of careful deliberation. The need to formulate and record an explanation, no matter how rationalized, willy-nilly introduces an element of judicial accountability which almost compels objectivity. It also makes more likely the revelation of erroneous reliance on grounds which, no matter how well intentioned, may be arbitrary or impermissible. Until now, most sentencing judgments have been unaccompanied by any overt analysis to help affected defendants, or society, or even our intermediate appellate courts, entrusted as they are with the power to renew sentences (e.g., People v Piacentine, 47 AD2d 663; People v Alston, 47 AD2d 761), better understand how particular sentences were arrived at. (See Robinson, Defendant Needs to Know, Fed Prob, Dec., 1962, p 3; see ABA Standards, Appellate Review of Sentences, § 2.3, Comment, pp 45, 46 [1968].)
Sentencing reasons also can serve as a means of communication between court and prison. At present there is a veritable barrier of silence between them. Prison officials are left as ignorant of what a Judge wishes to accomplish when he commits a convicted defendant, whether for instance to protect society or salvage the prisoner, as Judges are left uninformed about how the imprisonments of those they sentence work out.
Also, disparity in sentences and difficulty of review are, in important part, the consequence of an absence of guidelines (Challenge of Crime in A Free Society, A Report by the United States President's Commission on Law Enforcement and the Administration of Justice, p 145). True, standards are difficult to establish with precision. But a first and important step toward their development would be a body of recorded reasons for specific sentences. This is all the more so under minimum sentence statutes, whose experimental nature *735 thirsts for evaluation data so we may better come to understand when a minimum sentence works and when it does not. A minimum sentence statute, by taking flexibility from parole and correction authorities, correspondingly increases the responsibility for measurable judgments on the part of our courts. (Cf. ABA, Standards, Sentencing Alternatives and Procedures, p 14 et seq. [Approved Draft, 1968].)
In sum, the defendant here received no meaningful statement of reasons. That not only violated the letter of section 70.00, but, in running counter to its remedial purpose, was contrary to its spirit as well. Indeed, it is of more than passing interest that rules for the conduct of sentencing adopted only as recently as March 17, 1976 by the Second Circuit Judicial Council of the United States Court of Appeals provides that the sentencing Judge must "[s]tate for the record, in the presence of the defendant, the reasons for the particular sentence imposed and for rejecting available sentencing alternatives". (NYLJ, March 18, 1976, p 1, col 3, p 4, col 2.)
Accordingly, the trial court's failure to furnish reasons here is in my opinion, too consequential to be overlooked. Reasons and standards go to the heart of the quality of the sentencing process. Minimum and indeterminate sentences would both benefit much from their employment. The statute here mandates them in the minimum sentence case. This being such a case, its application should not have been in a meaningless form.
Therefore, I would vote to reverse and remit for resentencing, to be accompanied by a statement of reasons in accordance with section 70.00 of the Penal Law.
Order affirmed.